IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR IXIS REAL ESTATE CAPITAL TRUST 2005 – HE4 MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2005-HE4,<br><br>        Plaintiff,<br><br>   v.<br><br>LORRAINE LINDSEY, et al.,<br><br>        Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 13-2040 (JBS/JS)<br><br>**MEMORANDUM OPINION** |

**SIMANDLE, Chief Judge:**

    This matter came before the Court on Defendants Lorraine and Raymond Lindsey's motion to vacate default judgment. [Docket Item 15.] Defendants request that the Court vacate its August 22, 2013 Order entering default judgment for Plaintiff Deutsche Bank National Trust Company, as Trustee for IXIS Real Estate Capital Trust 2005 – HE4 Mortgage Pass Through Certificates, Series 2005-HE4 against Defendants. [Docket Item 14.] Pursuant to an order entered August 25, 2014, the Court continued Defendants' motion until hearing oral argument on the pivotal question of whether Defendants were served in this action. [Docket Item 24.] The Court held a hearing on September 16, 2014 during which the Court heard testimony from the process server

Thomas Crean, Jr., as well as Defendants Raymond and Lorraine Lindsey. In addition to the findings stated in the Court's August 25, 2014 Order, the Court now finds as follows:

    1.   The present action involves a dispute over a settlement agreement and loan modification related to a mortgage on Defendants' home in Franklinville, New Jersey. On April 1, 2013, Plaintiff filed its Complaint in the District of New Jersey seeking rescission of a Settlement Agreement and Release and Loan Modification Agreement executed on January 31, 2013. [Docket Item 1.] Plaintiff alleges that the loan modification was based on terms intended for a different loan by a different lender. Plaintiff contends it was unaware of the mistake until "(i) the loan medication terms were offered to the Lindseys, and (ii) Ocwen Loan Servicing, LLC, as attorney in fact for Wells Fargo (not Deutsche Bank) and the Lindseys executed both a Settlement Agreement and Release and a Loan Modification Agreement." (Am. Compl. [Docket Item 12] ¶ 26.])

    2.   The settlement and modification followed litigation in New Jersey state court between the parties, including a foreclosure action Plaintiff filed against Defendants on February 15, 2012 in the Superior Court of New Jersey, Gloucester County, <u>Deutsche Bank National Trust Company, as Trustee for IXIS Real Estate Capital Trust 2005 – HE4 Mortgage Pass Through Certificates, Series 2005-HE4 v. Lindsey</u>, F-003160-

12. That action was voluntarily dismissed when the parties reached their alleged settlement agreement, but the Superior Court did not adopt the settlement as a judgment nor did it play a role in convening settlement negotiations of the 2012 suit.

3. According to Plaintiff, Defendants were personally served with the Summons and Complaint in the instant action at their residence on April 3, 2013. [Docket Items 3 & 4.] Defendants' time to answer or otherwise respond expired on April 24, 2013. On August 22, 2013, after the Court required Plaintiff to address deficiencies in the Complaint regarding diversity jurisdiction, the Court granted Plaintiff's second motion for default judgment and entered judgment against Defendants. [Docket Item 14.]

4. In support of their motion to vacate default judgment, Defendants argue that they were never served with the summons or complaint in the present action and only became aware of this suit after Plaintiff on April 10, 2014 filed a second foreclosure action against them in Superior Court of New Jersey, Gloucester County, docket number F-013741-14. Defendants contend that their delay in responding is excusable because they were never served, that they maintain a meritorious defense, and that Plaintiff will not be prejudiced if the Court vacates the August 22, 2013 default judgment.

3

5.     Plaintiff opposes Defendants' motion [Docket Item 19] and argues that Defendants' failure to appear in this action was a conscious decision, calculated to permit them to stay in their home for months without making any mortgage payments. Plaintiff contends that it will be prejudiced if the Court vacates the default judgment because it detrimentally relied on the default in filing a second foreclosure action against Defendants. Moreover, Plaintiff asserts that Defendants' failure to appear in the instant action was culpable and their allegations regarding lack of service are unworthy of belief. Plaintiff concedes however that Defendants have satisfied their burden of establishing a plausibly meritorious defense.

6.     Fed. R. Civ. P. 55(c) provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Pursuant to Fed. R. Civ. P. 60(b)(4), "[o]n motion and just terms, the court may relieve a party . . . from a final judgment" if "the judgment is void." The Third Circuit leaves the decision to vacate the entry of default or a default judgment to the "sound discretion of the [trial] court." Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 244 (3d Cir. 1951). However, "[the Third Circuit] has adopted a policy disfavoring default judgments and encouraging decisions on the merits." Harad v. Aetna Cas. & Sur. Co., 839 F.2d 979, 982 (3d Cir. 1988).

4

7. In exercising its discretion to vacate entry of a default or a default judgment, the Court must consider (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct. United States v. $ 55,518.05 in U.S. Currency, 728 F.2d 192, 194–195 (3d Cir. 1984). Because "[a] default judgment entered when there has been no proper service of the complaint is, *a fortiori,* void, and should be set aside," in such instances, the district court need not resort to an analysis of the three factors listed above. Gold Kist, Inc. v. Laurinburg Oil Co., Inc., 756 F.2d 14, 19 (3d Cir. 1985); Mettle v. First Union Nat. Bank, 279 F. Supp. 2d 598, 603 n.3 (D.N.J. 2003) ("As this Court finds that entry of default against [defendant] is void based on the improper service of the summons and complaint, the Court need not consider the factors set forth in Gold Kist.").

8. Thus, the threshold issue is whether Defendants were properly served. Upon hearing testimony on September 16, 2014, the Court finds that Defendants were served with the summons and complaint in this action. The Court finds credible the process server's testimony that he personally served Mr. Lindsey at his home on April 3, 2013 at 8:05 p.m. The process server, Mr. Crean, candidly admitted that he could not specifically recall the evening in question. However, he relied on his

5

contemporaneous notes from April 3, 2013 in which he recorded personal service of Mr. Lindsey at his home in Franklinville, New Jersey, as well as an approximate physical description of Mr. Lindsey and the time of service.[1] It is unsurprising that Mr. Crean could not remember specific details about the Lindsey household or Mr. Lindsey's appearance given that he has served between 800 and 1,000 complaints in the intervening time. Mr. Crean credibly described his practice of taking detailed notes of his work within minutes of service which he has consistently utilized throughout his nearly 20 years in the industry.

9. In his contemporaneous notes, Mr. Crean noted the appearance of the man he served, namely as a male, white, with dark hair, age 55, height 5'9" and weight 180, with no special mention of facial hair. He also testified that his notes are accurate, that he left the Lorraine Lindsey summons and complaint with "Raymond," and that he understood from Raymond that Lorraine also lived at the same home. See Pl. Ex. 6. The Defendants argue that the physical description does not match Raymond Lindsey, who weighs 250 and has lighter hair and a "beard." The Court finds, from observing Mr. Lindsey, that he closely fits the description in age, height, race and hair color (which is medium toned brown and grey). His "beard" is easily

---

[1] The Court is unpersuaded by Defendants' contention that Mr. Lindsey does not match the description of the person Mr. Crean served as recorded in his notes.

6

missed because it is only the outline, with facial hair, of the perimeter of a goatee that is clean-shaven on the front of the chin. He has a normal mustache, but Mr. Crean usually does not note a mustache when it is present. As to weight, Mr. Lindsey does not appear to be 250 pounds, and Mr. Crean's estimate of 180 pounds, in the evening light and probably without a full view of the body, is quite plausible. Also, Mr. Crean testified that he wrote "Raymond" when the individual confirmed his name upon personal service, as was Mr. Crean's custom.

    10.  The Court does not find credible Mr. Lindsey's assertion that he was never served. Mr. Lindsey did not have the demeanor of someone who is engaged in paying careful attention to mail, bills or legal matters. His wife takes care of all such matters, according to their testimony. The Court believes Mrs. Lindsey's testimony that on this particular occasion her husband did not inform her of the documents with which he was served, including her summons and complaint. Mrs. Lindsey's testimony that she would have responded to the complaint had she known about it is supported by her active involvement in the first state court foreclosure action, including responding to summary judgment motions and filing her own cross-motion, despite proceeding pro se.[2] She testified credibly that she is the person

---

[2] Defendants' assertions of diligence remain valid despite failing to respond to the second state court foreclosure filing.

7

who, acting pro se, in 2012 negotiated what she regarded as a favorable mortgage reduction settlement which Deutsche Bank seeks to vacate in this case, and that she would not have stood idly by if she had been aware of this case in 2013. This also seems credible. Accordingly, the Court concludes that although Mr. Lindsey was served with the summons and complaint on April 3, 2013, Mrs. Lindsey never received those documents and remained unaware of this action until Plaintiff filed the second foreclosure action in state court in 2014.

11.  Because Plaintiff concedes that Defendants may satisfy their burden of proffering a meritorious defense, i.e., that the underlying settlement agreement from January, 2013 was valid, the Court need only consider the prejudice to Plaintiff and the culpability of Defendants' conduct. It is clear that Plaintiff has been prejudiced by Defendants' failure to appear in this action given the time and expense of filing two motions for default judgment in this court, the defense of this motion to vacate default judgment in which Defendants were duly served, and a second foreclosure action in state court. On the other hand, the Court considers Mrs. Lindsey's culpability to be

---

Defendants' counsel and Mrs. Lindsey explained at the hearing that after being served with the second state court complaint, Mrs. Lindsey immediately retained counsel. Counsel then made the strategic decision, whether misguided or not, to file the instant motion to vacate default judgment in this court, rather than respond to the second state court foreclosure action.

slight. While Mr. Lindsey's failure to read the documents served upon him or inform his wife of their existence is not acceptable, Mrs. Lindsey is guilty only of trusting her husband to inform her and to turn over documents to her. Mrs. Lindsey, though duly served by Mr. Crean leaving her summons and complaint with an adult in her household, nonetheless remained completely unaware of its existence until retaining counsel in response to the second state court foreclosure action a year later. Although the parties agreed at oral argument that no payments have been applied to Defendants' account since December, 2012, Defendants' failure to remit additional payments is perhaps understandable in light of Plaintiff's concession that it returned Defendant's December, 2012 payment due to the mistaken settlement agreement.[3] The prejudice to Plaintiff in vacating the default judgment is palpable but not as substantial as the prospect of Defendants, particularly Mrs. Lindsey, losing their home without a decision on the merits. The prejudice in needless expenditure of legal fees to obtain default and to

---

[3] It is troublesome that the Lindseys have not reduced even the negotiated version of their mortgage loan balance by payments since December, 2012; it is not part of this record whether the Lindseys have escrowed their monthly payments for these 21 ensuing months. If they are unable to satisfy their obligations under even the January, 2013 settlement agreement, foreclosure under either version of their mortgage – the original or the negotiated settlement of January, 2013 – would seem inevitable. But without this information, the Court cannot make the assumption that the Lindseys cannot remit their unpaid amounts.

litigate the present motion can be recouped. Especially considering the Third Circuit's policy favoring decisions on the merits, the equities in this case weigh in favor of vacating default judgment if the prejudice to Plaintiff can be mitigated through proper conditions placed upon the vacating of the default judgment.

12. Defendants' neglectful conduct in this action is not without consequence. Mr. Lindsey's nonchalance in receiving service of the summonses has its price. The Court will grant Defendants' motion to vacate default judgment and reopen this action on the condition that Defendants pay Plaintiffs' reasonable attorney's fees and expenses associated with the litigation of the instant motion for relief from default judgment. Under Fed. R. Civ. P. 60(b), "prejudice suffered by a non-defaulting party can be rectified through the trial court's power to impose terms and conditions upon the opening of a judgment." Hritz v. Woma Corp., 732 F.2d 1178, 1188 n.3 (3d Cir. 1984); see also Chaaban v. Criscito, Civ. 08-1567 (JAG), 2009 WL 275948, at *3 (D.N.J. Feb. 5, 2009). Payment of Plaintiff's reasonable attorney's fees and expenses accrued in opposing Defendants' motion will substantially diminish the prejudice to Plaintiff in reopening this case. This waste of Plaintiff's efforts and resources was the fault of Defendants. Accordingly, Plaintiff shall within 14 days of today's date submit a fee

application consistent with L. Civ. R. 54.2. Defendants will have 14 days thereafter to contest Plaintiff's application as to reasonableness of the amounts sought. The Court will determine the amount of fees and expenses and the Defendants will be directed to pay the sum equal to Plaintiff's reasonable attorney's fees and expenses ultimately approved by the Court. Upon satisfaction of this condition, the Court will set aside the default judgment.

    The accompanying Order is entered.

| | |
|---|---|
| **September 25, 2014** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE<br>Chief U.S. District Judge |